Good morning, your honors. My name is Kurt Mayer. I'm with the Federal Public Defender Office, and we represent Mrs. Nguyen in her appeal before this court. I'd like to reserve five minutes, if I may, for rubato, please. Watch the clock, please. Thank you. I'd like to start with why we believe this particular instruction on reasonable cause to believe is not appropriate in this particular case, especially in light of this Court's recent decision in Munguia. The Court's reasonable cause to believe instruction here made the hypothetical reasonable person the primary focus of the jury's inquiry because it didn't qualify for the jury whose knowledge was relevant in that phrase to have knowledge of facts. Could you help me with this? And it's our fault. Because I put the instructions of Nguyen, of this case, Munguia, Joe Hall, and Cower together, and I couldn't really understand how the instructions here were any different than the instructions in Cower and Joe Hall, but they were also very similar to the instructions in Munguia. So maybe you could help me understand what are the subtle differences. I think the instructions in Nguyen are identical to those we upheld in Cower. They are, Your Honor. It's actually the instruction that this Court approved of in Cower. And so I think there's two components to your question. The first would be what's the difference here versus, for example, in Cower. How can we say that the instructions here aren't okay in light of the instructions in Cower? Well, I think there's one big reason here, which I try to emphasize in my briefs, is that in this case the government presented the testimony of Mrs. Coyne. And that's what takes this case out of the Cower realm of instructions, because the jury had to be told it had to examine the facts that were actually known by Mrs. Nguyen and from her point of view. And here the Court didn't define Mrs. Nguyen's knowledge as the knowledge base that a jury had to use to decide what it is that she reasonably knew. The instruction, the way it was written, allowed the jury to include Mrs. Coyne's perspective as well. And in other words, it was what Mrs. Nguyen knew that would have been the foundation or that should be the foundation of the jury's analysis of reasonable cause to believe. One of the things that puzzled me about that argument was if, in fact, putting aside what we did in Cower, but we said it has to be a reasonable person from that person's perspective, I mean, here Mrs. Nguyen was a pharmacist, so it would be from a reasonable pharmacist's perspective, wouldn't it? Not necessarily. I think that's what defense counsel was trying to argue to the district court. You can say a reasonable pharmacist, but having Mrs. Nguyen's knowledge or knowing the facts that Mrs. Nguyen knew, I think that's the concern here. And I think the Court's subsequent cases, for example, Joe Hall and Kim, and of course now Munguia, point out the Court's uneasiness with just relying on the instruction that was used in Cower. Because in Cower, the difference between Cower factually in this case here is that in Cower, you just had Mrs. Cower buying or selling pseudo-federal products to undercover agent as well as an informant, whereas here you also have the testimony of Mrs. Coyne. And what Mrs. Coyne allowed the government was an influence and an argument that consistent with the reasonable and prudent pharmacist, Mrs. Nguyen should have known that what she was doing was selling pseudo-federal products to somebody who was going to use them to make methamphetamine. And that's really the problem, is that you have to give the jury context, I think is what Munguia talks about. You have to give the jury context, and that context is the defendant's perspective, what the defendant knew. And I also think that the defense counsel's instructions that he proposed originally was that the government has to prove the defendant actually believed in her own mind. Well, didn't we say that that was not correct because that would make the statute redundant because the statute differentiates between actual knowledge and reasonable cause to believe? Well, this is what I'd like to say about that. I don't think it does. I think that it would be the same if he had proposed an instruction that said the government must prove the defendant actually knew in her own mind. But he made it very clear that he was distinguishing between knowing and believing because if you say it this way, that the defendant must prove the defendant actually believed in her own mind, you're making the focus on the lens of the accused, which is what Munguia talked about. For example, a government with that kind of instruction could say, what did she actually believe? Well, we just need to look at the facts that she actually knew. But actually believe in her own mind doesn't sound the same to me as reasonable cause to believe. It's what she had reasonable cause to believe, which would be based on what she believed in her own mind. Well, it doesn't have to be reasonable, right? So the defendant could actually believe something that wasn't reasonable, but Congress told us that we had to look at reasonable cause to believe, which is more of an objective factor. But I do think it encompasses a reasonableness evaluation because the parties can argue. What she believed, what she says that she actually believed just isn't reasonable. She couldn't have believed that because it just isn't reasonable. I think that's what the defense counsel was trying to argue. And the instruction that he proposed also would have given the jury a way to evaluate the reasonableness of her beliefs based on the facts that she actually knew. So I really want to emphasize again, Judge, excuse me, to the Court, that the difference here really is Mrs. Coyne's testimony and what inferences were allowed to be drawn based on what she said she would have known or would have done based on a limited set of circumstances and not the complete circumstances with which Mrs. Wynn was acting under. And in other words, the jury could have said, well, we don't even need to think about what Mrs. Wynn knew. We can set that aside because Mrs. Coyne told us that what she knew and what she did was per se unreasonable. And just look at this from the perspective of a reasonable and prudent pharmacist. And a reasonable and prudent pharmacist would have known that based on what Mrs. Coyne knew, this gentleman, Federico, was buying these tablets to manufacture methamphetamine. What do you make, though, of the exchange between Federico and the defendant that was apparently captured on tape? She said she didn't hear it, but she testified. The jury evaluated her credibility. They evaluated his credibility. I think we have to assume that they sided with him that she did hear it and she was on actual notice as to what use this ephedrine was going to be put. I mean, isn't that the more important fact about whether she knew what was happening rather than whether she received newsletters that alerted people that pseudoephedrine is being used to manufacture drugs? Certainly, Your Honor, it is an evaluation the jury had to make, but the jury had to do that under a proper instruction, which we're saying the instruction that was given here didn't let them do that. Now, with regards to – this is also why this case is very similar to what happened in Munguia, where you have a defendant saying, I never heard that. For example, in Munguia, she had a boyfriend who claimed that he told her that they were buying these pills to make methamphetamine. She says, I never heard that or he never said that to me. And the issue there would have been the same. Who does the jury believe? And obviously, she was convicted, so the jury believed him. The defendant testified in Munguia, too? Yes, she did, Your Honor. And so there you have the same thing, but the issue there, again, is like the issue is here. Was the jury properly instructed to be able to evaluate that testimony, her testimony, so that what she believes was in the forefront of their evaluation of the reasonable cause to believe standard? You know, Judge Ikuda alluded to this, but I think the defect in the proposed defense instruction was they tried to sneak back in this actually believed language rather than reasonable to believe. I mean, what she actually knew was one thing, but was it reasonable to believe? And it towed the line between the former cases and the rule established there. I think I will admit that it wasn't the most artfully drafted instruction, that certainly the instruction in Munguia that the defense proposed was much more concise. However, this is what I would say, is there are actually two components to that instruction. The first was that he said actually believe what the defendant actually believes in her own mind, and he explained in his written instructions that that was to focus the jury on the lens of the accused, and he cited Saffo, the Tenth Circuit case for that. But also what he said is that the instruction should include a section that says a suspicion that it would be used is not a reasonable cause to believe, and that's also a key component in that instruction as well, because that is something that was allowed to be argued, that a suspicion in this case was actually what Mrs. Wynn had based on what Mrs. Coyne testified to, and that was good enough, and the court wouldn't even include that in there. So there are actually two components to his instruction. And I just want to point out is that he didn't just leave it at that instruction. He actually proposed two other instructions in his written objections to the government's instructions. They're in Excerpts of Records 66 and 68, but he basically said that reasonable cause to believe means the defendant knew facts that either caused her to subjectively believe or would cause a reasonable person to objectively know. So he did make a, he offered that as a backup instruction if the court wasn't going to instruct, give his instruction. And again, I know it's a difficult point to argue in the few minutes that we have here, but there was a subtlety to what he was talking about that makes good sense, and that is he did not want to equate knowing with believing. The last part of the instruction you just recited would not have been a correct statement of the law, though. The alternative where he says, or it would have caused a reasonable person to know, that's exactly what Munguia says is forbidden. It has to be shown that this defendant knew or should have known. Well, and I think what he was trying to say there, again, was that the defendant knew facts that would cause a reasonable person to know. In other words, a reasonable person's knowledge or beliefs would have to be tied to what the defendant knew, which, again, I think is something that this court throughout its cases on this point has emphasized. It has to be what the facts that the defendant knew have to be paramount in the jury's evaluation of the phrase reasonable. Well, but doesn't the Model 9 jury instruction allow that argument? Because it says here, reasonable person knowing the same facts. And unlike Munguia here, the defendant fully explained her argument that she lacked the requisite knowledge, that she knew what the informant was intending to do with the pseudo-veteran. But that's what I think, that's what the point is that I'm making, Your Honor, is that it's the definition of to have knowledge of facts has to be tied to the defendant's knowledge. There has to be something in that instruction that says it's the defendant's knowledge that you're looking at, jury, not anybody else's. You can't consider what Mrs. Coyne thought or believed, only what the defendant believed. And I think that's what this court said in Munguia, is that you can't have a jury evaluating what a hypothetical reasonable person would have done or would have believed. Thank you. Good morning, Your Honors. My name is Mark Tackle, and I represent the United States. Contrary to what defense argue, I believe the Munguia decision supports affirming the case, the instant case. And the reason for it is that Munguia specifically affirmed the instructions used in Carr and in Joe Hall. And that's on page 14 and 15 of the opinion. The court specifically states on both of those pages that we uphold an instruction that allowed the jury to convict based on a finding that Carr had a reasonable cause to believe it would be so used. On page 15, the court says, this court says in Joel, we upheld a jury instruction that allowed conviction under the reasonable cause to believe standard. And again, as this court's already pointed out, the government, or at least the district court, instructed the jury identical to those instructions in Joe Hall and Carr. So what's the difference between the instruction in Munguia and the instruction in Carr and Joe Hall? I understand that the words are in a different order, but I couldn't see why there was any difference in the meaning. Your Honor, I would agree with that concern. When I first reviewed it, I was surprised that that instruction was found to be a determining of a reasonable person standard. Reviewing the opinion, I think maybe one of the things that the court was concerned about was particularly the way it was argued. And there were certain references in that case where the prosecutor argued that a reasonable person would know that the pseudoephedrine would be used to manufacture methamphetamine. And so I think that might have been one of the problems that the court had, is that there was some sort of confusion by all as to really what that instruction meant. But I would agree with the court. I mean, the words are in a slightly different order. With respect to the instruction that was used, I think maybe the court wanted to see reasonable cause to believe means to have knowledge, which would cause a reasonable person, and then knowing the same facts after reasonable person. So it was clear to the jury that it has to be a reasonable person knowing the same facts. And maybe because that language regarding a defendant knowing the same facts was earlier on in the instruction, the court was concerned about a jury misunderstanding it. And so in Carr and Joe Hall, and as the court instructed in this case, the instruction stated reasonable person knowing the same facts. And so I think maybe that's one explanation as to why those instructions were upheld and the one in McGee wasn't. So opposing counsel says, well, similarly in this case, the testimony by Ms. Coyne puts the instruction in a different context and could be confusing to the jury in the same way. I disagree. I think defense counsel's statement that Ms. Coyne's testimony was so, I think defense counsel overemphasizes her testimony. I think certainly with respect to the expert opinion that she gave, whether a reasonable pharmacist or whether a pharmacist's background and knowledge and understanding is relevant in determining whether a pharmacist has reasonable cause to believe that pseudo-amphetamine would be used to make methamphetamine. And that's certainly the reason why the government presented that evidence, is because the defendant's background was certainly relevant. And so that's one factor that supports a conclusion that she knew or had reasonable cause to know that pseudo-amphetamine would be made into methamphetamine. So I think defense counsel overemphasizes Ms. Coyne's testimony, but I think that is certainly probative evidence on the ultimate issue as to whether the defendant did have reasonable cause to believe. But is the standard a reasonable person or a reasonable pharmacist? That's a great question, Your Honor. And sticking because of the concerns of these cases, I would say it's a reasonable person knowing what the defendant knows. And so I wouldn't say it's a reasonable pharmacist, but I would think it's a reasonable person knowing what the defendant knows, and then you can factor in the background experience and knowledge of a particular defendant and use that in determining what she knew or she did not know. Well, given that argument, was it problematic that the government introduced evidence of what the professional standards are for pharmacists? Does that confuse the jury as to whether a reasonable person equates to a reasonable pharmacist standard? I don't think so, because I think certainly the defendant's pharmacy background experience is relevant to determine whether or not she had reasonable cause to believe that the pseudo-amphetamine would be used to make methamphetamine. I mean, certainly that is a factor, unlike an ordinary person who's not a pharmacist. Her background training, 20 years of working in pharmacies and hospitals and doing the job as a pharmacist, that certainly is going to be relevant in determining whether she had reasonable cause to believe. And so I don't think that testimony is problematic at all from the standpoint of basically the witness was only explaining these are the standards, the reasonable standards are the standards with respect to what pharmacists are required to live by. And she, I believe, was properly certified as an expert in the case, and that opinion was proper. And I think that her testimony was placed in the proper context in that a lot of these arguments were made by the defense counsel in closing. And there was no confusion that Ms. Coyne's testimony, she was not testifying as to contrary to what defense counsel claimed defendant's intent. She never testified that the defendant in this case had reasonable grounds to believe or reasonable cause to believe that the pseudo-amphetamine would be made into methamphetamine. She testified only these are the standards of professional contact that we require all of our pharmacists to live by. And so I think her testimony was placed in the proper context specifically in that area. There was another aspect of this that I'm a little more dubious about. Was there any actual evidence that the defendant received and read the newsletters that were generated by the pharmaceutical industry? There was no direct evidence that the defendant read those newsletters. The government presented that evidence because there was evidence that you can make an inference that the letters were sent to her house. And I think that's the purpose of the testimony is that we have a situation in which Ms. Coyne testified that she is involved in the writing of the letters. Does it have to go farther than that though? I mean for this to be really relevant evidence, some tendency and reason to prove a material fact, don't you have to have something that suggests that she read them? I have to tell you I get flooded with stuff. I get flooded with magazines and newsletters and a lot of them just go right into the trash. And I hate to think that knowledge of the contents are imputed to me because it came to my mailing address. There's a difference between legally significant documents like mailbox rule where summons is sent and we can make some assumptions that people are going to take notice of that and then industry newsletters. Don't you acknowledge that? I would agree to that, Your Honor. But I think the relevancy standard is any tendency to prove any fact of consequence. How do we prove then that because it was received there and it's a newsletter, that she paid any attention to it, read it, absorbed any of the contents? Well, again, I agree with you, Your Honor. There's no direct evidence that was presented that she actually read it. But I think a jury in conjunction with all the other facts, the jury can conclude that that would be relevant in determining whether or not she had reasonable cause to believe. And I think these points were made specifically on cross-examination. Again, this evidence was placed in the proper context that there is no direct evidence that she read it. But I think one point, Your Honor, I would like to kind of come back to one of the other elements or at least one of the other evidence that was presented in this case is that there was an FDA printout that was found in her pharmacy. Now, defendants claim in this trial, and she testified as such, is that she did not know that pseudofedrin can be made into methamphetamine. They found an FDA printout in her pharmacy which stated that pseudofedrin can be made into methamphetamine, discussed the daily limits, discussed that an ID had to be made. That was found in her pharmacy. And at the time that evidence was presented, there was no evidence that she actually read that document. But I don't think there are any people that would conclude that just because the government couldn't come prove that she actually read the document, that that's not relevant. And I think the newsletters kind of fall in the same category. If it's mailed to the person's residence, and I thought we had pretty conclusive evidence that it was mailed to that residence. The defendant, Ms. Coyne, testified that it was sent to the place where billing statements were sent. The defendant on cross-examination admitted that she received her billing statements and that she paid all of her dues. And so I think we can get the, I think it's fairly conclusive that the letters got to her address. But again, whether she read it or not, the government couldn't prove that, nor could the government prove that she read the FDA printout. But the FDA printout certainly would be probative evidence of whether or not the defendant had reasonable cause, reasonable cause to believe that the pseudofedrin would be made into methamphetamine. Now one thing I do want to underscore is kind of the harmless error, but I guess even if the court was to determine that that was improper to admit, that the error was harmless. And the government's position, my position, is that there was overwhelming evidence that the defendant actually knew that the pseudofedrin she sold would be made into methamphetamine. I disagree with the defendant's contention that this was a swearing match between the CI and Ms. Coyne on one side and the defendant on the other. There was overwhelming evidence. Number one, we had the CI's statements, which were recorded, in which she said that the pseudofedrin, that he had a large quantity of stuff that his friends in San Jose wanted to make. You have the FDA printout, which was found in the defendant's pharmacy, which discussed the daily limits of pseudofedrin. It was admittedly highlighted by her, which she testified on direct when she testified. And above that highlighted portion, it stated that pseudofedrin could be made into methamphetamine. You had such an incredibly large amount of pseudofedrin that went through her pharmacy over that three-and-a-half-month period. It was over 10,000 boxes of pseudofedrin based on the supply records. 10,000 boxes equated, in my math, to about 70 boxes a day that she would be selling pseudofedrin. You have the repeated misstatements and lies that she made to the investigators in this case. Number one, that she didn't know pseudofedrin could be made into methamphetamine. She stated to the investigators that she didn't sell pseudofedrin in her pharmacy. She stated that she didn't, when they pointed out that you have pseudofedrin, she stated it was sold in front of the counter, which ended up being a lie. We also have defendant's CVS training, in which she had to input a personal ID number and a code in order to answer these questions, which the employee at CVS testified she had to score 100%. And there were questions there that discussed the daily limits for pseudofedrin, and one of those questions was that pseudofedrin can be made into a very terrible drug. You have the false logbook that was found in her pharmacy, where you have entries in the logbook that law enforcement tried to follow up on, and there were no real addresses. And then at the very bottom, I would say the script magazine and mispoints testimony. And so here you have a lot of overwhelming evidence that she actually knew. And I think this comes back to the instruction, too, the harmless error of the instruction, is that this case was always argued from day one by the government as a case in which the defendant knew. We were never relying on the reasonable cause to believe standard. It was the defendant knew that this pseudofedrin would be made into methamphetamine. And that's contrary to the case in Munguia, where the case was kind of argued by the government as a reasonable grounds or a reasonable person type standard. But I do note that in my closing argument, I started off with there is only one question in this case, whether the defendant had a reasonable cause to believe that she was selling pseudofedrin for one, a legitimate purpose, or two, to make methamphetamine. And in the following page, I stated specifically, you can take into consideration the facts she knew at the time. Let's look at what the defendant knew. So there's no question to the jury, I think, based on that, and that they understood that you were allowed to take into consideration what the defendant knew. And I think that's a fairly strong distinction between Munguia in this case, is that the argument was a little bit different. Now, Your Honor, I would like to move on to the rebuttal argument, unless the Court has some other concerns about other areas. I will admit, and again, I was the prosecutor who argued that case, and I will admit it was inartfully said, some of the statements that I made in rebuttal, but there was no shift of burden to the defense at any time. There is ample case law in this area in which when a defense counsel, during closing argument, identifies specific individuals that the government could have called as witnesses, that the government could come back and state, well, the defense has subpoena power to. And I do note that before I made that statement, and after the objection, which the defense argued that I was shifting the burden, I specifically stated that the burden is at all times on the government. In addition to that, the jury instructions, of course, stated that the burden is on the government, and defense counsel, during his closing argument, 16 times stated that the burden is on the government. And so I just don't believe that there's any reasonable conclusion here that the jury misunderstood the standard or was misled or thought that defendant had an opportunity or had a requirement to go and present evidence, because it was absolutely clear from start to finish that the burden was on the government. I know that there's a lot of cases there that the defendant doesn't point out to, or doesn't write a response to in those ones, but I believe that the standard is pretty clear and that there was no confusion. And as the district court also noted that in overruling the defense objection, that he didn't believe that there was any confusion with respect to that burden. I do want to note that there was one – let me take that back. I do want to talk one other – speak really quickly about the expert testimony of Ms. Coyne. I believe under 704 that this testimony was proper. It did not go to the ultimate issue, as the defense argued. Ms. Coyne never testified as to defendant's intent, and I believe that under a number of these cases, the Younger-Gonzalez range of cases, which talked about when a law enforcement investigator can testify to the possession with intent to sell, I think that comes a lot closer to the line of improper 704 evidence than the evidence in this case. Ms. Coyne did not testify to the defendant's intent. She testified to the standards of professional conduct and only the standards of professional conduct. And I think the testimony of Ms. Coyne is akin to the so-called dirty doctor cases, to MacIvor and Katz, in which doctors – sometimes the government will present evidence of a doctor's standards of professional conduct with respect to prescribing medication. And with that, Your Honors, unless there's no further questions, I would submit. Thank you. We have some time for rebuttal. With regards to what the government counsel said about his argument in closing, I disagree with that. And, of course, you can look at the record to see for yourself. But he said there's only one question in this case, which is whether Mrs. Wynne had reasonable cause to believe she was selling pseudoephedrine for, one, a legitimate medical purpose. Then he further says later, there's no way she reasonably could believe that was going to be used for a legitimate medical purpose. That is what he was arguing. It wasn't that he was arguing that she knew. He was saying that she had reasonable cause to believe that this was not going to be used for a legitimate medical purpose. And that phrase, legitimate medical purpose, came from Mrs. Coyne. And that's why what I was trying to argue earlier was that there's a problem with this instruction, is it didn't bring Mrs. Wynne's knowledge to the forefront. Judge Ikuda, with regards to your question that you asked me at the beginning, also the prosecutor, I think that Carr is really a foundational case now, as opposed to, like, the be-all and end-all statement on this particular part of the law. Since that time, both in Joe Hall and in Kim and in, now, Munguia, the court has reemphasized over and over again that it's the defendant's knowledge, that's the paramount concern of the jury in a reasonable cause to believe evaluation. And the difference between this case and Munguia and, for example, like Carr, is that in both this case and in Munguia, you had defendants that said they didn't have reasonable cause to believe because of certain specific facts that they knew. In our case, it would have been because Federico went out of his way to convince Mrs. Wynne that he was buying these to sell for their legitimate use down in Mexico in order to help his struggling family. And he went to great lengths to convince her of that, that that's why he was buying them. And he even said that he was doing everything he could so that she would not find out what his true purpose was. And the same thing in Munguia, as you have Munguia testifying that her boyfriend never told her that these were going to be sold for the purpose of manufacturing methamphetamine. She was scared to ask many more probing questions because he had in the past beaten her. And that's really what makes these two cases the same and distinctive from Carr, Joe Hall, and Kim. Thank you. Okay. The case of United States v. Wynne is submitted.
judges: Burns, Ikuta, Nguyen